SAUCKE BROS. CONSTRUCTION Co., INC., Plaintiff, *v.* EDWARD A. COMSTOCK and Others, Defendants.

Supreme Court, Monroe County, January 21, 1931.

*Walter S. Forsyth*, for the plaintiff.

*Wile, Oviatt & Gilman*, for the defendants Comstock and Kimball.

*William T. Plumb*, for the defendant Amsden.

*George Lynn*, for the defendant Tomlinson, as assignee.

CUNNINGHAM, J.   The defendant Iuppa & Battle Co., Inc., was awarded a contract for the construction of buildings at the Rochester

State Hospital. It was necessary for the contractor to file a bond in the penal sum of $389,390 to guarantee the performance of the contract. Application for such bond was made to the National Surety Company. The surety company, before issuing the bond, required indemnity from the contractor so as to protect itself against loss. As a result of negotiations a contract was entered into in which the defendants Comstock and Kimball agreed to advance the sum of $100,000, said sum to be held by Kimball and Amsden, described as trustees. The contractor was required to assign to the said trustees all sums to become due upon the contract. The moneys coming into the hands of the trustees were to be applied " to the payment of the cost of performing said contract."

The contract recites that it is executed " for the purpose of giving the Surety Company additional protection against loss by reason of having executed said bond."

After the contract had been completed and the final payment made thereon by the State, Amsden and Kimball divided the money in their hands proportionately among those who had claims against Iuppa & Battle Co., Inc., in connection with the construction of the State hospital building.

Comstock and Kimball had advanced to the trustees the sum of $180,000 to be used to pay the costs of construction under the contract with the State. The claims of subcontractors amounted to about $69,000. The trustees divided the moneys remaining in their hands, giving forty-six per cent to each, including Comstock and Kimball. The subcontractors now claim that Comstock and Kimball had no right to participate in the distribution of these funds.

The circumstances leading up to the execution of the contract with the National Surety Company, as well as the terms of the contract itself, show that it was made solely for the benefit of the surety company and not for the benefit of the subcontractors. The National Surety Company was the promisee in this agreement and the promises or covenants in the contract ran to it and were for its benefit. The plaintiff and other subcontractors were not parties to this contract. It was not made for their benefit and the surety company was under no obligation to them. They would have the right to sue upon the contract only in case the promisee was obligated to them. (Seaver v. Ransom, 224 N. Y. 233, 237; Deyer v. Hyde, 251 id. 450, 456.)

In Eastern Steel Co. v. Globe Indemnity Co. (186 App. Div. 892; affd., 227 N. Y. 586) the court at Special Term said: " The defendants in express terms obligated themselves by their bond to the city

of New York to the extent of $170,000. By their bond the defendants in effect guaranteed the city that the Wills & Marvin Company, to which the city of New York had awarded a contract for the erection of certain buildings in connection with the Brooklyn Institute of Arts and Sciences would ' well and truly and in good, sufficient and workmanlike manner perform the work mentioned in the aforesaid contract, in accordance with the terms and provisions therein stipulated, and shall promptly make payment of the sums due to all persons supplying labor and materials in the prosecution of the work provided in the said contract.'

" The plaintiff, a foreign corporation, did certain work and furnished certain materials in the erection of the buildings in question as a subcontractor of the Wills & Marvin Company. It now brings an action against the defendants to recover a balance due to it under its subcontract, basing its right of recovery upon the bond above mentioned. It seems to me to be unnecessary to consider the interesting arguments urged in behalf of the plaintiff which seeks to differentiate the facts alleged in this action from those appearing in cases upon which the defendants rely, for the reason that at the threshold of this action the plaintiff is confronted with what to me seems to be an insuperable objection in that the bond runs to the city of New York and carries with it the presumption that the bond was executed solely for its benefit and not for that of subcontractors. To hold that the instrument in question was intended to operate as a guaranty to the subcontractors would be to read into it something to which the parties thereto had not agreed. Plaintiff claims that it relied upon the city's public advertisement for proposals for bids, which referred among other things to the guaranty above described. It is obvious, however, that the advertisement necessarily was intended only for the use and benefit of those who might submit bids for the contract with the city to the end that they might be apprised of the conditions under which the contract would be awarded and was not designed to induce subcontractors to believe that they would be guaranteed in the payment of their subcontracts. The defendants' motions for judgment upon the pleadings must be granted."

The Appellate Division in granting leave to apply to the Court of Appeals in that case said (185 App. Div. 695): " The bond does not purport on its face to be given for the benefit of the laborers or materialmen, but is given to the city of New York and is exacted as security against liens arising out of the prosecution of the work. In order for this bond to be enforcible against the surety it would be necessary for the city to be under some duty or obligation to the materialmen. In other words, there would have to

be some privity between the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise. (*Vrooman* v. *Turner*, 69 N. Y. 280, 283; *Seaver* v. *Ransom*, 224 id. 233.) In this case, in our opinion, there was no such right in the materialmen against the city."

The *Eastern Steel Co.* decision is, therefore, authority for the proposition that the surety company, in this case, was not under obligation to the subcontractors and also for the proposition that in the absence of such obligation third parties not privy to the contract may not recover thereon. Therefore, the plaintiff in this case has no cause of action upon the contract made for the benefit of the National Surety Company.

The plaintiff was not prevented from filing a lien by any statement made by the defendants. The rights of the assignees to the moneys to become due upon the contract are superior to those of the lienors and in this case the plaintiff would have gained nothing by filing a lien. (*Carroll Sand Co.* v. *Jones*, 231 App. Div. 121.)

When the contract of Iuppa & Battle Co., Inc., with the State was completed and the work thereunder accepted and final payment made therefor, that released the National Surety Company from further liability upon its bond and it had no further interest in the funds held by Kimball and Amsden under the contract. It then became the duty of Kimball and Amsden to settle with Iuppa & Battle Co., Inc.

The only right plaintiff might have had to a portion of said funds was as a creditor of Iuppa & Battle Co., Inc. The trustees were not under obligation to pay these moneys over to the plaintiff, but might have delivered them to Iuppa & Battle Co., Inc., for distribution.

I am of the opinion that as between Comstock and Kimball and the Iuppa & Battle Co., Inc., the former had an equitable lien upon the funds in the hands of the trustees to the extent of at least $100,000, the amount specified in the contract. As they retained only about $84,000 as their share, it appears that the plaintiff and other subcontractors have received more than their proportionate share of the funds in the hands of the trustees.

I believe that the trustees acted fairly and equitably in apportioning the funds remaining in their hands.

The complaint is dismissed.